UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                                              Case No. 02-24159-CEC

MONIQUE MICHELLE McCOY,                                      Chapter 7

                            Debtor.
-------------------------------------------------------------x

## DECISION

Appearances:

| | |
|---|---|
| Kevin J. Nash, Esq. | Paul I. Krohn, Esq. |
| Goldberg Weprin Finkel Goldstein, LLP | 40 Clinton Street |
| 1501 Broadway | Suite 1G |
| New York, NY 10036 | Brooklyn, NY 11201 |
| Attorney for Trustee | Chapter 7 Trustee |
| | |
| Jeffrey D. Buss, Esq. | Matthew E. Oren |
| Smith, Buss & Jacobs, LLP | 77-17 138th Street |
| 733 Yonkers Avenue | Apartment A |
| Yonkers, NY 10704 | Flushing, NY 11367 |
| Attorney for Gothic Tenants Corp. | Pro Se |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of Paul I. Krohn (the "Trustee"), the chapter 7 trustee of the estate of Monique Michelle McCoy (the "Debtor"), to approve a stipulation settling the claims asserted by Gothic Tenants Corp. ("Gothic"). Matthew Oren ("Mr. Oren") objects to the approval of the settlement. For the reasons stated herein, the motion to approve the settlement with Gothic is granted.

Jurisdiction

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 157(b)(2)(A),(B) and (O) and 1334(b) and the standing order of reference of the United States District Court for the Eastern District of New York dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Bankruptcy Rule 7052.[1]

Background

On November 7, 2002, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code. Prior to the commencement of this case, the Debtor entered a proprietary lease agreement (the "Lease") with Gothic with respect to the Debtor's cooperative apartment located at 84-50 169th Street, Jamaica, New York (the "Apartment"). The Lease was signed by the Debtor and the Secretary of Gothic, as well as Mr. Oren as witness. Mr. Oren had provided funding to the Debtor to purchase the Apartment.

On July 9, 2010, the Court issued an order (the "Sale Order") granting the Trustee's motion for approval to sell the Apartment. The Sale Order authorized the Trustee to sell the Apartment to Nur Alom Khan and his spouse, Shayla Parvin (jointly, "Khan"), if Mr. Oren failed to obtain approval from Gothic to purchase the Apartment himself. Mr. Oren failed to obtain

---

[1] All references to the Bankruptcy Rules are to the Federal Rules of Bankruptcy Procedure.

approval and the Trustee accordingly sold the Apartment to Khan on September 17, 2010, generating net proceeds of $117,053.00 (the "Sale").

The Trustee then entered into settlement negotiations with Gothic, which holds a first priority lien over all net proceeds of the Sale. Gothic asserted a claim totaling $161,317.72, consisting of unpaid maintenance charges of approximately $66,500; unpaid late charges of approximately $46,400; and legal fees of approximately $48,400. Ultimately, the Trustee and Gothic agreed to a settlement fixing Gothic's claim, to be paid from the proceeds of the Sale, in the amount of $91,538.45 (the "Settlement"). Under the Settlement, Gothic agreed to waive all late fees and interest, and to limit its attorneys' fees to $25,000. Other than Gothic, Mr. Oren is the only remaining creditor in the case. The Chapter 7 Trustee waived his right to seek commissions on the sale of the Apartment, and the Chapter 7 trustee's attorneys have agreed to limit their request for attorneys' fees to $5,000. (Consent Order, ECF No. 29.)

On November 19, 2010, the Trustee filed a motion to approve the Settlement pursuant to Bankruptcy Rule 9019(a) (the "Motion"). After several adjournments, a hearing was scheduled for February 8, 2011.

On February 8, 2011, Mr. Oren filed an objection to the Motion and appeared telephonically at the hearing that afternoon. Mr. Oren objected to the Settlement based upon his contention that (1) Gothic does not have a first priority lien on the Apartment; and (2) the Settlement is not reasonable because the amount proposed to be paid to Gothic includes an excessive and improper amount of fees and interest.

Legal Standard for Approval of Settlements

A bankruptcy court may approve a compromise and settlement pursuant to Bankruptcy Rule 9019 if it "is fair, reasonable and adequately based on the facts and circumstances" before the court. In re Hibbard Brown & Co., 217 B.R. 41, 45 (Bankr. S.D.N.Y. 1998). "As a general matter, settlements or compromises are favored in bankruptcy and, in fact, encouraged," In re Adelphia Commc'ns Corp., 368 B.R. 140, 226 (Bankr. S.D.N.Y. 2007), "because they minimize the costs of litigation and further the parties' interest in expediting the administration of a bankruptcy estate" Inv. Exch. Grp., LLC v. Colo. Capital Bank (In re 1031 Tax Group, LLC), Case No. 07-11448, Adv. Pro. No. 07-1710, 2007 WL 2455176, at *3 (Bankr. S.D.N.Y. August 23, 2007).

In determining whether a proposed settlement should be approved, a court must determine whether the settlement is in the best interests of the estate and whether it is "fair and equitable." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968). The court's responsibility is to "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (alteration in original) (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)).

The court may give weight to the "'opinions of the trustee, the parties, and their attorneys'" that the settlement is fair and equitable. Adelphia, 368 B.R. at 226 (quoting Official Comm. of Unsecured Creditors of Int'l Distribution Ctrs., Inc. v. James Talcott, Inc. (In re Int'l Distribution Ctrs., Inc.), 103 B.R. 420, 423 (S.D.N.Y. 1989))).

It is not necessary for the bankruptcy court to rule on disputed issues of fact and law or to conduct a "mini trial" on the merits of the underlying litigation. In re Purofied Down Prods. Corp., 150 B.R. 519, 522 (S.D.N.Y. 1993); Adelphia, 368 B.R. at 225; In re Ashford Hotels,

Ltd., 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998). At the same time, a court may not simply defer to a trustee's judgment, but must independently evaluate the reasonableness of the settlement. See TMT Trailer Ferry, 390 U.S. at 424; Kayo v. Fitzgerald, 91 Fed. App'x 714, 716 (2d Cir. 2004); Purofied Down Prods., 150 B.R. at 523; Ashford Hotels, 226 B.R. at 803.

The Second Circuit has summarized the factors that a court must consider when deciding whether a settlement falls above or below the lowest point in the range of reasonableness, as follows:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;
>
> (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;
>
> (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";
>
> (4) whether other parties in interest support the settlement;
>
> (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;
>
> (6) "the nature and breadth of releases to be obtained by officers and directors"; and
>
> (7) "the extent to which the settlement is the product of arm's length bargaining."

Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007) (alteration in original) (quoting In re WorldCom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

The Objections

Mr. Oren argues that the Settlement should not be approved because Gothic does not have a perfected security interest in the Apartment or the proceeds of the sale, and therefore Gothic's claim may not be paid before Mr. Oren's claim. In support of his argument, Mr. Oren asserts that the Lease did not bind the Debtor to Gothic's by-laws (the "By-Laws") and thus the "first lien" described in Article VI, section 6 of the By-Laws never attached as a security interest to the Apartment. Moreover, Mr. Oren argues that, even if Gothic had a security interest in the Apartment, it does not have priority over his own claim because Gothic never perfected its security interest by filing a financing statement.

"By itself, a proprietary lease does not give a cooperative corporation a lien or security interest in the shares of a lessee." Anchev v. 335 W. 38th St. Coop. Corp., 920 N.Y.S.2d 239 (Table), No. 602993/99, 2010 WL 4628030, at *2 (N.Y. Sup. Ct. Oct. 12, 2010). See also McMillan v. Park Towers Owners Corp., 640 N.Y.S.2d 144, 145 (N.Y. App. Div. 1996) ("[T]he mere existence of a proprietary lease, without more, does not establish an enforceable security agreement to which the Uniform Commercial Code applies."). A security interest is only created when the cooperative corporation and the lessee enter an agreement that describes the collateral, the value received by the lessee, and the lessee's rights in the collateral. Fundex Capital Corp. v. Reichard, 568 N.Y.S.2d 794, 795 (N.Y. App. Div. 1991); Anchev, 2010 WL 4628030, at *2. However, the agreement between the corporation and the lessee is governed, not only by the proprietary lease, but also by the corporation's bylaws and certificate of incorporation, all of which must be read together. Fe Bland v. Two Trees Mgmt. Co., 66 N.Y.2d 556, 563 (N.Y. 1985)); Anchev, 2010 WL 4628030, at *2. "Inseparably joined, neither the corporate nor the leasehold attributes of the [agreement] can be viewed in isolation from one another." Fe Bland,

66 N.Y.2d at 563 (citing In re State Tax Commn. v. Shor, 43 N.Y.2d 151, 157 (N.Y. 1977)). Accordingly, Gothic's By-Laws must be read as binding terms of the overall agreement between Gothic and the Debtor. Article VI, Section 6 of Gothic's By-Laws grant Gothic a "first lien upon the shares" to secure all rent payments and "other indebtedness" owed by the shareholder under the proprietary lease.

A cooperative organization's security interest that is created by a cooperative record and secures obligations incident to ownership of that cooperative interest is a "cooperative organization security interest" and is governed by the Article 9 of the Uniform Commercial Code (the "UCC"). See N.Y. U.C.C. §§ 9-109(a)(7) and 9-102(a)(27-b)-(27-e) (McKinney 2011). "[T]he filing of a financing statement is not necessary to perfect a . . . cooperative organization security interest." Id. § 9-310(b)(11). Rather, a "cooperative organization security interest becomes perfected when the cooperative interest first comes into existence and remains perfected so long as . . . [it] exists." Id. § 9-308(h). The UCC describes the creation of a "cooperative organization security interest" as follows:

> A cooperative record that provides that the owner of a cooperative interest has an obligation to pay amounts to the cooperative organization incident to ownership of that cooperative interest and which states that the cooperative organization has a direct remedy against that cooperative interest if such amounts are not paid is a security agreement creating a *cooperative organization security interest*.

Id. § 9-102(73)(emphasis added).

By creating a first lien on the shares in order to secure the lease payments from the shareholder, the By-Laws establish Gothic's "direct remedy" against the Debtor's "cooperative interest" if the Lease obligations are not paid. Id. Thus, the By-Laws and Lease constitute a "cooperative record" that grants Gothic a perfected cooperative organization security interest in

the Apartment. N.Y. U.C.C. §§ 9-102(73), 9-102(27-d), 9-308(h). As a claim secured by a perfected cooperative organization security interest, Gothic's claim has priority over any other claims secured by the Apartment. Id. § 9-322(h)(1). Accordingly, Mr. Oren's objections to the proposed settlement based upon the argument that Gothic does not hold a first perfected security interest in the Apartment must be overruled.

Next, Mr. Oren argues that Gothic is not entitled to the post-petition maintenance fees and late fees included in the Settlement because the Trustee did not assume the Lease within 60 days and therefore, according to Mr. Oren, the Lease was automatically rejected pursuant to § 365(d)(1) of the Bankruptcy Code. 11 U.S.C. § 365(d)(1). This argument lacks merit, because the Lease is not subject to the provisions of section 365. A proprietary lease in a cooperative corporation "is not a 'true' lease under section 365." In re Lefrak, 223 B.R. 431, 438 (Bankr. S.D.N.Y. 1998). "Accordingly, the trustee's failure to assume the lease [does] not lead to its rejection or affect the estate's interest." Id. Therefore, § 365 does not prohibit Gothic from receiving post-petition maintenance or fees pursuant to the Lease.

Mr. Oren also argues that the rate used in determining the late fees on unpaid maintenance charges is usurious in that it exceeds the legal limit of 16% per annum pursuant to § 5-501 of New York's General Obligations Law and Banking Law 14-a. This argument, too, must be rejected. As Mr. Oren concedes in his objection, the rate used to calculate late fees can only be considered usurious if the late fees constitute interest on a loan or forbearance. Feinberg v. Old Vestal Rd. Assocs., 157 A.D.2d 1002, 1003 (N.Y. App. Div. 1990) ("'[W]here there is no loan, there can be no usury.'" (quoting Oxhandler Structural Enters. v. Billard, 427 N.Y.S.2d 569 (N.Y.Sup. Ct. 1980)0). Here, the late fees are a penalty for failure to make maintenance payments as they become due; the transaction involved no loan by Gothic. Gothic's late fees are

Case 1-02-24159-cec    Doc 100    Filed 08/09/11    Entered 08/09/11 14:33:58

8

designed to insure the prompt payment of maintenance bills and are not a loan or forbearance of money.  See In re City of Binghamton, 133 A.D.2d 988, 989 (N.Y. App. Div. 1987) (regarding penalties for failure to pay water and sewer assessments).  Accordingly, the fees are not usurious as a matter of law.  Moreover, the late fees are waived under the Settlement.  (Mot., Ex. 1, Stipulation of Settlement ¶2.)

Mr. Oren also objects to the legal fees included in the Settlement and argues that Gothic's attorneys' fees and expenses do not fall within the scope of the Lease's provision providing for the recovery of attorneys fees and expenses.

Paragraph 28 of the Lease provides as follows:

If the Lessee shall at any time be in default hereunder and the Lessor shall incur any expense (whether paid or not) in performing acts which the Lessee is required to perform, or in instituting any action or proceeding based on such default, or defending, or asserting a counterclaim in, any action or proceeding brought by the Lessee, the expense thereof to the Lessor, including reasonable attorneys' fees and disbursements, shall be paid by the Lessee to the Lessor, on demand, as additional rent.

(Settlement, Ex. B, Lease ¶ 28.)

Mr. Oren argues that Gothic's attorneys' fees and expenses, totaling $48,432.81 and detailed in Exhibit F to the Settlement, were not incurred "in instituting any action or proceeding based upon [the Debtor's] default, or defending or asserting a counterclaim in, any action or proceeding brought by the [Debtor]."  Mr. Oren argues that Gothic's attorneys' fees were not incurred in litigation relating to the Debtor's chapter 7 petition or in seeking relief from the automatic stay, but were instead incurred in an attempt to "profiteer by buying the Apartment for itself at a discount to resell for a profit," by performing the managing agent's duties, and by engaging in "inappropriate dealings with the Trustee's broker and appraiser."  (Oren Opp'n ¶ 22, ECF No. 95.)

Gothic argues that all of its legal fees incurred during this bankruptcy case are recoverable pursuant to the Lease's provision because the Debtor was in default under her obligations to Gothic, and this bankruptcy case constitutes a "proceeding brought by the Lessee."

Mr. Oren cites no authority to support his narrow interpretation of the Lease's attorneys' fees provision. It is undisputed that the Debtor is in default in her obligations to Gothic. Gothic has incurred attorneys' fees and expenses in an attempt to obtain payment on its claim. Cf. Dupuis v. 424 East 77th Owners Corp., 821 N.Y.S.2d 173, 174-175 (N.Y. App. Div. 2006) (cooperative board's attorneys' fees and expenses denied because lessee was not in default). Mr. Oren has not specified which entries on Exhibit F are beyond the scope of that purpose.

Further, under the Settlement, Gothic's claim for legal fees is reduced from $48,432.81 to $25,000.00, a discount of $23,432.81. Such a reduction (particularly when taken together with the waiver of approximately $46,400 of late fees) is more than sufficient to account for any inefficiency or inappropriate charges.

In sum, it is clear that the Settlement satisfies the requirements of Iridium.[2] The $117,053.00 in net proceeds from the Sale is all the estate has left to pay creditors. Gothic's claim of $161,317.72, if allowed, would consume the entire estate. Mr. Oren has presented no viable argument why Gothic's claim, if litigated, would be disallowed to an extent sufficient to permit any distribution to creditors other than Gothic. Denying approval of the Settlement would further prolong an already unduly prolonged bankruptcy case, and could result in no distribution to any creditor other than Gothic. On the other hand, the Settlement permits a distribution to be made to administrative claimants and to Mr. Oren. The Settlement was reached by means of arms-length bargaining between the parties involved and is in the best interests of the estate.

---

[2]Mr. Oren's argument that Gothic's secured claim is nondischargeable under § 523(a)(16) of the Bankruptcy Code provides no grounds to object to the Settlement. The fact that a claim is nondischargeable under § 523 is not a basis to disallow it. 11 U.S.C. § 502(b).

Therefore, the Settlement does not fall "below the lowest point in the range of reasonableness," and must be approved. <u>W.T. Grant</u>, 699 F.2d at 608.

## Conclusion

For the foregoing reasons, the Settlement is approved. A separate order will be entered.



**Dated: Brooklyn, New York**
**August 9, 2011**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**